IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMILA JOHNSON, et al.<br><br>Plaintiffs,<br><br>v.<br><br>KYLE ARDOIN, in his official capacity as the Acting Secretary of State of Louisiana,<br><br>Defendant. | Case No. 3:18-cv-625-SDD-EWD |

## DEFENDANT SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Plaintiffs' bring a claim under § 2 of the Voting Rights Act of 1965 ("VRA") alleging that the Louisiana Legislature intentionally diluted the votes of African Americans when it created a single majority-minority district in the state following the 2010 census. The Court should dismiss the claim because Plaintiffs failed to request a three-judge court pursuant to 28 U.S.C. § 2284. Further, Plaintiffs have failed to state a claim under Federal Rules of Civil Procedure 12(b)(6) because they never sufficiently alleged that a second *compact* congressional district can actually be created in Louisiana. Finally, these districts were drawn after the 2010 census, three congressional elections and 7 years ago. The fourth congressional election under the current plan is only a few months away and there will be a new census in less than two years. Because of this, the equitable doctrine of laches bars Plaintiffs' request for relief. Pursuant to these reasons, the Plaintiffs' case should be dismissed.

### ARGUMENT

**I.   Plaintiffs Failed to Request a Three-Judge Panel Which is Proper for Cases Involving Congressional Reapportionment.**

1

Plaintiffs attempt to avoid the statutory trigger for a three-judge court under 28 U.S.C. § 2284 by not expressly citing the Fourteenth and Fifteenth Amendments to the United States Constitution. However, Plaintiffs here bring specific allegations that implicate the Fifteenth Amendment by pleading that state officials intentionally discriminated against African-American voters when they reapportioned congressional seats in Louisiana in 2011. *See Nevett v. Sides*, 571 F.2d 209 (5th Cir. 1978) (holding that official action that is alleged to be racially motivated which infringes or dilutes the right to vote is a cause of action under the Fifteenth Amendment); *see also United States v. Raines*, 362 U.S. 17, 25 (1960) (discrimination by state officials on grounds of race or color is a "state action" subject to the ban of the Fifteenth Amendment); *see also Irby v. Virginia State Bd. of Elections*, 889 F.2d 1352 (4th Cir. 1989) (allegations of discriminatory intent or motivation in matters of race implicate the Fifteenth Amendment). The Amended Complaint is littered with allegations of intentional discrimination. *See, e.g.*, Amend. Comp. at ¶ 3 ("[T]he Louisiana State Legislature . . . chose to limit minority voting strength and political influence by 'packing' African-American voters into one majority-minority district . . . ."); *id.* at ¶ 4 ("African-American voters were packed into the Second Congressional District . . . ."); *id.* at ¶ 10 ("Louisiana's failure to create a second majority-minority congressional district in its 2011 Congressional Plan has resulted in the dilution of African-American voting strength . . . ."). As such, the Plaintiffs' Voting Rights Act claim is also a Fifteenth Amendment claim in disguise.

Furthermore, even if Plaintiffs can get around the fact that, despite what they claim, they actually have pled a violation of the Fifteenth Amendment, the underlying language of Section 2 of the Voting Rights Act and the Fifteenth Amendment are essentially identical. *See City of Mobile v. Bolden,* 446 U.S. 55, 61 (1980). The purpose of the Voting Rights Act is to enforce the Fourteenth and Fifteenth Amendments. The Supreme Court has long held that the various

2

provisions of the Voting Rights Act are simply the implementations of the substantive rights and authorities granted by the Constitution's Civil War amendments (i.e. the Thirteenth, Fourteenth, and Fifteenth amendments). It is axiomatic at this point that "[u]nder our Constitution, the Federal Government is one of enumerated powers." *City of Boerne v. Flores*, 521 U.S. 507, 516 (1997). Plaintiffs, through artful pleading, are attempting to circumvent the legislative and historical importance of the Fourteenth and Fifteenth Amendments in voting rights cases.

Plaintiffs try to distinguish *Page v. Bartels*, 248 F.3d 175 (3d Cir. 2001) by concluding that if a VRA claim is brought alone then it is properly brought in front of a single district court judge. Dkt. 27 at 7. However, this is not what the case held. The court in *Page* held that since VRA claims "are generally inextricably intertwined with constitutional claims," a single district court judge cannot separately reach the VRA claims without referring the case to a three-judge panel. *Page,* 248 F.3d at 190. The various aspersions Plaintiffs cast in their Response are in effort to distract this Court from three fundamental truths: (1) cases dealing with congressional apportionment were specifically set aside by Congress due to the extraordinary federalism concerns contained therein, (2) a VRA claim is necessarily a claim that is constitutional in nature, and (3) in any event, it is undoubtable that the congressional intent of § 2284 was to subject *all* cases involving congressional apportionment to a panel of three judges. In fact, *Page* reinforces the fact that it is impossible to address a VRA claim without involving the Fourteenth and Fifteenth Amendments.

Finally, Plaintiffs argue that Congress has had three decades to amend § 2 of the VRA. Dkt. 27 at 7. However, as previously stated, when Congress did revise § 2248 three-judge panels were the only courts who had jurisdiction in congressional reapportionment cases. It is apparent that the only reason why Plaintiffs filed their claims only under § 2 of the VRA was to avoid a three-judge panel. This attempt at forum shopping is not what the law allows and is clearly not

3

what Congress intended. As such, this Court should reject Plaintiffs attempted circumvention of proper procedure and appoint a three-judge panel.

**II.     Plaintiffs Have Failed to Show That it is Plausible for African American Voters to Constitute Two Compact Majority-Minority Districts.**

Plaintiffs do not sufficiently allege that African American voters can constitute a reasonably compact majority in two districts. First, Plaintiffs have not provided any remedial map. A map is especially important here because the 2011 plan was precleared by the Department of Justice and there is a history of litigation holding that a second majority-minority district in Louisiana constitutes a racial gerrymander. *See, e.g.*, *Hays v. Louisiana*, 936 F. Supp. 360 (W.D. La. 1996) (hereinafter, *Hays III*) (where two majority-minority district plans were invalidated and a plan with a single majority-minority district was put in its place). Second, Plaintiffs allege that the overall demographics in Louisiana have changed since the *Hays* cases; however, they do not allege that the demographics have changed sufficiently since the 2010 census or that the precleared 2011 reapportionment plan would allow for the creation of a second majority-minority district. Because the population percentages have not changed, it is probable, if not likely, that a remedial map will not be any different from the unconstitutional maps in the *Hays* cases. Finally, all talk of remedial maps aside, Plaintiffs have not shown that two majority-minority districts are facially plausible in Louisiana.

Plaintiffs falsely assert that Defendant's compactness argument is premised on the assertion that at the pleading stage compactness normally requires submitting illustrative plans of hypothetical districts. Dkt. 27 at 14. This assertion is incorrect. Defendant merely argues that the standard under Rule 8 and *Iqbal* requires more than mere "accusation[s]" and must include "sufficient factual matter." *See Ashcroft v.* Iqbal, 556 U.S. 662, 678 (2009). Consequently, due to the history of these cases in Louisiana, it makes an illustrative or hypothetical plan extremely

4

important in order to decide the cases plausibility. *See generally Hays v. Louisiana*, 839 F. Supp. 1188 (W.D. La. 1993); *Hays v. Louisiana,* 862 F. Supp. 119 (W.D. La. 1994); *Hays III*, 936 F. Supp. 360. Further, Defendant cites to multiple cases demonstrating that it is standard procedure for parties to submit hypothetical redistricting schemes in these types of cases and how the Eleventh Circuit requires a map at the pleading stage. *See Gonzalez v. Harris Cty.*, 601 Fed. Appx. 255, 258 (5th Cir. 2015) (per curium); *Fairley v. Hattisburg,* 584 F.3d 660, 669 (5th Cir. 2009); *Broward Citizens for Fair Dists. v. Broward Cty.*, 2012 U.S. Dist. LEXIS 46828, *18, n. 6 (S.D. Fla. 2012); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1199 (11th Cir. 1999). Even if a map is not a *per* se requirement, the Plaintiffs must adduce some "factual matter" allowing "the court to draw [a] reasonable inference." *See Iqbal*, 556 U.S. at 678. This is a pleading burden the Plaintiffs have unquestionably failed.

Plaintiffs disregard the heightened pleading requirement in their response and instead argue that as the "African American population was displaced from New Orleans, their numbers grew more concentrated in other areas of the State, paving the way for a second majority-minority district in 2011 under a VRA-compliant map." Dkt. at 15. While hurricane Katrina certainly had significant impacts on Louisiana, Plaintiffs did not provide any facts, statistics, or law about how this impacts the State's overall demographics and how this pertains to the creation of a second majority-minority district in Louisiana. These demographic changes were certainly known when the Holder-led Department of Justice precleared this map. In addition, Plaintiffs concede that population percentages have not changed since the ruling in *Hays III. Id*. Without an illustrative map or any detailed demographic facts or statistics, it is impossible to know whether a second majority-minority map is even plausible in Louisiana, let alone required by the VRA or the

Constitution. Therefore, Plaintiffs have failed to sufficiently plead their case and this claim should be dismissed.

### III.     The Equitable Doctrine of Laches Bars Plaintiffs Requested Relief.

Plaintiffs waited seven years and three congressional elections to bring their claim and they still do not explain why they waited so long to file it. They do not even address this delay in their reply. Additionally, *Maxwell v. Foster*, 1999 U.S. Dist. LEXIS 23447, *10-11 (W.D. La. Nov. 24, 1999) (three-judge court) held that less prejudice is required to show laches then when Plaintiffs expeditiously file a claim. The more time that passes by, the more it becomes unequitable to the defense. In *Maxwell*, plaintiffs brought a claim challenging three of Louisiana's legislative districts seven years after the apportionment plan was precleared by the Department of Justice. *Id.* at *3. The defendants raised the equitable doctrine of laches on Summary Judgment as an affirmative defense and the district court found, *inter alia*, that equitable considerations are applicable "in particular [to] voting rights cases" and when apportionment was precleared. *Id*. at *4. Here, the Plaintiff's claims are almost identical to that in *Maxwell*. Since the district court found the equitable doctrine of laches applied in *Maxwell*, this Complaint must be dismissed.

By waiting this long, Plaintiffs have prejudiced the Secretary of State and will cause undue burden for the benefit of a single election. The Court should be weary that this is a slippery slope to walk down and could encourage burdensome litigation of reapportionment cases many years after each census.

## CONCLUSION

Plaintiffs' claim should be dismissed.

Dated: September 4, 2018                                  Respectfully Submitted,

| | |
|---|---|
| Jason Torchinsky (VSB 47481)* | JEFF LANDRY |
| Phillip M. Gordon (TX 24096085)* | ATTORNEY GENERAL |
| HOLTZMAN VOGEL JOSEFIAK | /s/ Angelique Duhon Freel__ |
| TORCHINSKY PLLC | Angelique Duhon Freel (La. Bar Roll No. 28561) |
| 45 N. Hill Drive, Suite 100 | Carey Tom Jones (La. Bar Roll No. 07474) |
| Warrenton, VA 20186 | David Jeddie Smith, Jr. (La Bar Roll No. 27089) |
| Telephone: (540) 341-8808 | Jeffrey M. Wale (La. Bar Roll No. 36070) |
| Facsimile: (540) 341-8809 | Assistant Attorneys General |
| Email: jtorchinsky@hvjt.law | Louisiana Department of Justice |
| pgordon@hvjt.law | Civil Division |
| * *Admitted Pro Hac Vice* | P. O. BOX 94005 |
| | Baton Rouge, Louisiana 70804-9005 |
| | Telephone: (225) 326-6060 |
| | Facsimile: (225) 326-6098 |
| Celia R. Cangelosi (La. Bar Roll No. 12140) | Email: walej@ag.state.la.us |
| 5551 Corporate Blvd. Suite 101 | freela@ag.louisiana.gov |
| Baton Rouge, LA  70808 | jonescar@ag.louisiana.gov |
| Telephone: 225-231-1453 | smithda@ag.louisiana.gov |
| Facsimile: 225-231-1456 | |
| Email: celiacan@bellsouth.net | |
| *Counsel for Defendant Louisiana Secretary of State* | |

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 4th day of September 2018, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system which gives notice of filing to all counsel of record. Counsel of record not registered in the CM/ECF system were served via other means.

                                                **/s/ Angelique Duhon Freel**
                                                Angelique Duhon Freel