IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMILA JOHNSON, et al.<br><br>Plaintiffs,<br><br>v.<br><br>KYLE ARDOIN, in his official capacity as the Secretary of State of Louisiana,<br><br>Defendant. | Case No. 3:18-cv-625-SDD-EWD |

**DEFENDANT SECRETARY OF STATE'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

As is well established, Plaintiffs' bring a claim under § 2 of the Voting Rights Act of 1965 ("VRA") alleging that the Louisiana Legislature intentionally diluted the votes of African-American voters following the 2010 census. Plaintiffs' claims should be dismissed or alternatively referred to a panel of three-judges under 28 U.S.C. § 2284. Plaintiffs' claims should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Finally, Plaintiffs' claims are bared by the equitable doctrine of laches.

Aside from the merits of Secretary's arguments, Plaintiffs complain that many of Secretary's arguments to Plaintiffs' Amended Complaint were "nothing new" from our Motion to Dismiss the Original Complaint.[1] This charge is as unnoteworthy as it is accurate. It is well settled that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Wells Fargo Capital Fin., L.L.C. v. Nobel*, 553 Fed. Appx. 453, 456 (5th Cir.

---

[1] Not to overly digress, but much of Plaintiffs' brief relies on rather strident language when referring to the Secretary's arguments. *See* Pls' Second Resp, ECF No. 34-1 (accusing the Secretary of engaging in "willful ignorance" and describing the Secretary's arguments as "baseless"); *cf.* Antonin Scalia & Bryan Garner, Making Your Case: The Art of Persuading Judges, 13 (2008) ("Never overstate your case."). As has been, and will be, shown, much of Plaintiffs' hyperbolic language is "full of sound and fury. Signifying nothing." William Shakespeare, Macbeth act 5, sc. 5.

1

2014). Furthermore, much of the Motion to Dismiss the Amended Complaint is "nothing new" because the much of the Amended Complaint is "nothing new." To put it another way, the inadequacies that infect the Original Complaint continue to infect the Amended Complaint.[2]

### I. This Case Should be Dismissed or, Alternatively, Heard by a Three-judge Court.

As has been discussed in multiple briefs, this Court should dismiss or alternatively refer this case to the Chief Judge for the United States Court of Appeals for the Fifth Circuit for the establishment of a three-judge panel pursuant to 28 U.S.C. § 2284. *See e.g.,* Def's Second Motion to Dismiss, ECF No. 33-1 at 2-8. The Secretary continues to maintain that: (1) Plaintiffs effectively plead a constitutional claim without specifically naming it, (2) a claim under the Voting Rights Act is, in fact, constitutional in nature, (3) the purpose of § 2284 was to address the significant federalism concerns attendant in congressional apportionment litigation; and (4) the congressional intent of § 2284 was to subject all federal cases involving congressional apportionment to a panel of three-judges. ECF No. 33-1 at 8.

Plaintiffs argue, in effect, that because they did not use the word "constitution" in their Amended Complaint, their claim is not a constitutional claim. However, their challenge to Louisiana's 2011 congressional reapportionment is undeniably constitutional in substance. Allegations of intentional discrimination by state officials within the course of their official duties on grounds of race is state action subject to the ban of the 15th Amendment. *United States v. Raines*, 362 U.S. 17, 25 (1960). Allegations of racially motivated official action that infringes or dilutes the right to vote states a cause of action under the 15th Amendment. *Nevett v. Sides*, 571

---

[2] Given the procedural uncertainty of the applicability of Secretary's original Motion to Dismiss and Reply, the Secretary, out of an abundance of caution, incorporates by reference all of the arguments found in his Original Motion to Dismiss and Reply in so far as they are relevant to the Amended Complaint. *See* Def's First Motion to Dismiss, ECF No. 16; Def's Reply in Support of First Motion to Dismiss, ECF No. 32.

F. 2d 209 (5th Cir. 1978). Allegations of discriminatory intent or motivation in matters of race implicate the 15th Amendment. *Irby v. Virginia State Bd. of Elections*, 889 F. 2d 1352 (4th Cir. 1989).

In determining federal jurisdiction in the removal context, the courts have refused to allow a plaintiff to defeat jurisdiction by artfully omitting to plead essential issues in the complaint and thereby evade federal jurisdiction. *Eitmann v. New Orleans Public Service, Inc.*, 730 F. 2d 359, 365 (5th Cir. 1984). Federal pleadings are determined by their substance, not the labels used in them. *In Re Carter*, 618 F. 2d 1093, 1101 (5th Cir. 1980). By the same token, the plaintiffs should not be permitted to skirt the mandatory language of 28 U.S.C. § 2284 by omitting the words "constitution" and "gerrymandering".

There are multiple specific allegations in the Amended Complaint that constitute distinct claims of constitutional dimension. *See* Amend. Comp., ECF No. 19 at ¶ 3 ("[T]he Louisiana State Legislature (the "Legislature") chose to limit minority voting strength and political influence by 'packing' African-American voters into one majority-minority district and cracking them among other districts . . . ."); *id.* at ¶ 4 ("African-American voters were packed into the Second Congressional District . . . ."); *id.* at ¶ 5 ("The packing of African-American voters is most pronounced along the Mississippi River from Orleans Parish to East Baton Rouge Parish . . . to cut Kenner, St Rose, and New Sarpy out of CDs 1 and 6 on the north shore . . . ." while African-Americans in other parishes were put in other districts.); *id.* at ¶ 34 (discussing a proposed redistricting plan that "was anticipated" to have given African-American voters the ability to exert greater influence over congressional elections initially passed through the Senate but "was eventually killed in the House Committee when then Governor Jindal publicly threatened to veto if it made it to his desk."); *id.* at ¶¶ 39 ("[A]t the time of the 2011 Congressional Plan's passage,

the Legislative Black Caucus 'raised serious questions about the intentions of the authors and the results of the maps presented'"); *see also id.* at ¶¶ 44-89 (various allegations setting out claims of intentional discrimination and official acts of racism that have allegedly continued through the present day). Taken as a whole, the pleading does not merely plead an effects case under Section 2 of the VRA but asserts that racially motivated and intentional official state action discriminated against African-American voters based upon race, which are decidedly claims and allegations that invoke the 15th Amendment.

The Amended Complaint also alleges racial gerrymandering (although avoiding the use of the word 'gerrymandering') in drawing election districts so as to intentionally dilute African-American voting strength. Racial gerrymandering raises an equal protection claim under the 14th Amendment that must be decided by the Court and as such a decision on constitutional, and not strictly statutory, grounds is unavoidable.

As is evident, the purpose of the three-judge panel under 28 U.S.C. § 2284 is to ensure that decisions of constitutional import particularly on voting rights issues are determined by a panel of judges rather than a single district judge. The Court in this case will be called upon to decide whether the elements of a constitutional claim are present and if so, whether to impose a constitutional remedy. Denying a three-judge panel review in this case would circumvent 28 U.S.C. § 2284 and the extraordinary federalism concerns inherent in reapportionment cases. *See e.g., Tallahassee Branch NAACP v. Leon County*, 827 F.2d 1436, 1438 (11th Cir. 1987) ("Principals of federalism and common sense mandate deference to a plan which has been legislatively enacted.").

If the Court holds that a three-judge panel is not required, this Court should immediately certify the question for appeal under 28 U.S.C. § 1292(b). Despite what the Plaintiffs argue, the

4

Secretary has been quite clear on the reasons why 28 U.S.C. § 1292(b) should be invoked in this case. *See e.g,* ECF No. 33 at 2-8; *supra* at 2-4. Under § 1292(b) the Secretary must show that there is "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b). To make it even more clear, the Secretary contends that (1) the "controlling question of law" is the applicability of 28 U.S.C. § 2284 to a case brought under the Voting Rights Act without explicit invocation of a constitutional provision, ECF No. 33-1 at 2-8, (2) there is a "substantial ground for difference of opinion" as shown by the uniqueness of Plaintiffs' claim and arguments raised by the Secretary throughout his briefing, ECF Nos. 16, 32, 33, and (3) an interlocutory appeal will "advance the ultimate termination of the litigation" by avoiding the extreme waste of judicial resources that would otherwise occur without the appointment of a three-judge panel, *see* ECF Nos. 16, 32, 33; *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002).

A request for immediate appeal under 28 U.S.C. § 1292(b) is further necessitated by the potential for the extreme waste of judicial resources that will occur if this case proceeds under a single-judge. Section 2284 states that "[a] district court of three judges *shall* be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284 (emphasis added). The use of the word 'shall' "admits of no exception, and the mandatory 'shall' normally creates an obligation impervious to judicial discretion." *Shapiro v. McManus*, 136 S. Ct. 450, 454 (2015) (internal alterations omitted) (unanimous court). Consequently, if this Court believes § 2284 applies then the Court must dismiss or refer this for the empaneling of a three-judge court. *See* 28 U.S.C. § 2284(b).

Cognate with the mandatory application of the statue is its jurisdictional nature. *See Shapiro*, 136 S. Ct. at 454; 28 U.S.C. § 2284(c) (outlining the powers of a single judge when a three-judge court is empaneled). A trial improperly conducted under a single-judge when a three-judge panel is required would be overturned for lack of jurisdiction. Per the terms of 28 U.S.C. § 2284, a single judge may not determine any application for injunction nor enter judgment. *See* 28 U.S.C. § 2284(b). In fact, any order of a single judge is subject to a review by the whole panel. *Id*. Consequently, 28 U.S.C. § 2284 is jurisdictional and as such, absent referral to a three-judge court, would necessitate dismissal of the entire case. *See generally Shapiro*, 136 S. Ct. at 454-55 (discussing the mandatory nature of § 2284 and the extent of a district court's power to dismiss a case requiring a three-judge court); *see also Lemery*, 244 F. Supp. 2d at 728 ("It would pain the Court to see both attorneys of this excellence and well motivated Parties proceed to judgment after considerable expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks subject matter jurisdiction.").

**II.    Plaintiffs Still Have Not Shown that Two Reasonably Compact Majority-Minority Districts are Possible in Louisiana.**

The Plaintiffs continued attempts to ignore the modern pleading standards found in *Twombly, Iqbal,* and their progeny and to distract this court from its significant pleading failures should be rejected. It is hornbook law that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] Plaintiffs do not meet this burden.

Plaintiffs primarily attempt to distract this court by arguing that that the Secretary proceeds from a false premise with respect to Rule 8's pleading standards. ECF No. 34 at 12 ("The Fifth Circuit cases that Defendant relies on . . . do not evaluate the requirements for *pleading*

---

[3] It is also telling that Plaintiffs never actually cite *Iqbal* and cite to *Twombly* only once. ECF No. 34 at 2.

compactness, but rather discuss the requirements for *proving* compactness . . . .") (emphasis in original). Obviously, the Secretary agrees that there is a difference between proving compactness in a trial and alleging sufficient facts at the pleading stages. The purpose of the references to *Gonzalez* and *Fairley* in the Second Motion to Dismiss, as is obvious from its context, is to show that maps are a commonplace evidentiary tool in redistricting litigation. *See Gonzalez v. Harris Cty., 601 Fed. Appx.* 255, 258 (5th Cir. 2015) (per curium); *Fairley v. Hattisburg,* 584 F.3d 660, 669 (5th Cir. 2009). Yes, a *map* is one way to introduce *factual matter* to maintain a claim under Rule 8. *See Broward Citizens for Fair Districts v. Broward County,* No. 12-60317-CIV, 2012 WL 1110053 (S.D. Fla. Apr. 3, 2012); *see also NAACP v. Snyder*, 879 F. Supp. 662, 679 (E.D. Mich 2012) (stating that at the motion to dismiss stage an "alternative proposal" is "perhaps necessary to show that the harm alleged is capable of being remedied" but "is not necessarily sufficient to overcome the presumption that the state acted in good faith . . . ." in a Voting Rights Act case.). However, there are certainly other ways to allege sufficient factual matter as to compactness. *See e.g., Vieth v. Jubelirer*, 541 U.S. 267, 348, n.3 (2004). Irrespective of the various ways in which compactness may be sufficiently alleged in a complaint, Plaintiffs' have failed them all. Unlike what Plaintiffs assert, the map referred to—but never produced—in their Response says *nothing* as to that map's *compactness*[4]. *Compare* ECF No. 34 at 13 (noting that the map referenced in Am. Comp. ¶ 35 is a "rallying cry for compactness"); *with* Am. Comp. ¶ 35 (discussing, *inter alia*, proposed districts' Black Voting Age Population ("BVAP") and which districts are "included . . . in their entirety"). Instead, Plaintiffs' simply rely on a recitation of the elements of proving a Section 2 claim, which is simply not sufficient under *Twombly*, *Iqbal*, and their progeny. *See*

---

[4] Compactness in the redistricting context is a term of art and is measured in multiple scientifically validated ways such as Polsby-Popper. *See e.g. Vieth*, 541 U.S. 267, 348, n.3 ("[Compactness] can be measured quantitatively in terms of dispersion, perimeter, and population ratios . . . .").

*Twombly*, 550 U.S. at 555 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"); *see also* ECF No. 33-1 at 16.

### III.     Laches Bars Plaintiffs' Claim.

Plaintiffs continue to advance the idea that prospective relief is a bar to laches, ECF No. 34-1 at 15-16, when, in fact, there is no such bar for Section 2 claims. *See Ariz. Minority Coalition for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n,* 366 F. Supp. 2d 887, 908 (D. Ariz. 2005) (Laches "applies to redistricting cases as it does to any other."); *Fouts v. Harris*, 88 F. Supp. 2d 1351, 1354 (S.D. Fla. 1999) (An "ongoing violation of citizens' constitutional rights" is no bar to the application of laches based on "well settled reapportionment and laches case law."); *MacGovern v. Connolly*, 637 F. Supp. 111 (D.C. Mass. 1986) (per curiam) (dismissing complaint on laches alleging malapportionment of legislative districts in violation of the Fourteenth Amendment); *Knox v. Milwaukee County Bd. of Elections Comm'rs*, 581 F. Supp. 399, 407 (E.D. Wisc. 1984) (denying a preliminary injunction on the basis of laches for a VRA claim). In fact, "equitable considerations can and do factor into equal protection challenges, in particular voting rights cases, even when the challenged plan is found unconstitutional." *Maxwell v. Foster*, 1999 U.S. Dist. LEXIS 23447, *6-7 (W.D. La 1994) (three-judge court) (dismissing racial gerrymandering and VRA claims based on laches) (citing *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990)). The "severity" of the alleged claim is no bar to the application of laches as even "[a] constitutional claim can become time-barred just as any other claim can." *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) (Roberts, C.J. for a unanimous court).

Further, in contrast to yet another strident claim by Plaintiffs, *see* ECF No. 34-1 at 16, Defendants have, in fact, asserted prejudicial facts. *See* ECF No. 33-1 at 20-22 ("Plaintiffs will prejudice the Secretary of State and People of Louisiana by throwing the election machinery into

8

disarray for the benefit of a single election under the current apportionment plan."). Furthermore, in the context of laches, "prejudice may include the loss of records, destruction of evidence, fading memories, or unavailability of witnesses." *See Steelmark v. The M*, 2002 U.S. Dist. LEXIS 22594 (E.D. La 2002). The current reapportionment plan was adopted seven years ago. Several of the legislators who voted for the plan are no longer in office[5] and it is undoubtable that memories will have faded and e-mails and papers have been lost. Additionally, as has been well documented, there have been significant shifts in population in Louisiana since the last census. *See e.g.,* U.S. Census Bureau, American Fact Finder, Orleans Parish, https://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml (Enter "Orleans Parish" into search box; then click hyperlink under "2017 Population Estimates"). Purely as a consequence of the Plaintiffs' unexcused delay in bringing the case, the Secretary's defense will necessarily be based upon stale and outdated information and will consequently run the risk of enacting a reapportionment that may result in unfair and inaccurate representation.

Finally, the Secretary, the Legislature, and the citizens of the State of Louisiana will all be prejudiced by the reapportionment of congressional districts on the eve of the next decennial census. This "rapid-fire reapportionment immediately prior to a scheduled census would constitute an undue disruption of the election process, the stability and continuity of the legislative system and would be highly prejudicial . . . ." *Maxwell*, 1999 U.S. Dist. LEXIS 23447 at *12.

## CONCLUSION

---

[5] This court can take judicial notice, for example, that at least six members of the State Senate and ten members of the State House in 2011 were ineligible to run again as a result of term limits.

For the aforementioned reasons, this Court should either dismiss this case or refer this case to a three-judge panel. If this Court declines to dismiss or refer this matter to a three-judge panel, Defendant respectfully requests certification of appeal pursuant to 28 U.S.C. § 1292(b).

Dated: October 3, 2018                                    Respectfully Submitted,

*/s/ Jason Torchinsky*                                    JEFF LANDRY
Jason Torchinsky (VSB 47481)*                             ATTORNEY GENERAL
Phillip M. Gordon (TX 24096085)*                          */s/ Angelique Duhon Freel*
HOLTZMAN VOGEL JOSEFIAK                                   Angelique Duhon Freel (La. Bar Roll No. 28561)
TORCHINSKY PLLC                                           Elizabeth Murrill (La. Bar Roll No. 20685)
45 N. Hill Drive, Suite 100                               Carey Tom Jones (La. Bar Roll No. 07474)
Warrenton, VA 20186                                       David Jeddie Smith, Jr. (La Bar Roll No. 27089)
Telephone: (540) 341-8808                                 Jeffrey M. Wale (La. Bar Roll No. 36070)
Facsimile: (540) 341-8809                                 Assistant Attorneys General
Email: jtorchinsky@hvjt.law                               Louisiana Department of Justice
pgordon@hvjt.law                                          Civil Division
*\* Admitted Pro Hac Vice*                                P. O. BOX 94005
                                                          Baton Rouge, Louisiana 70804-9005
Celia R. Cangelosi (La. Bar Roll No.                      Telephone: (225) 326-6060
12140)                                                    Facsimile: (225) 326-6098
5551 Corporate Blvd. Suite 101                            Email: walej@ag.state.la.us
Baton Rouge, LA 70808                                     freela@ag.louisiana.gov
Telephone: 225-231-1453                                   jonescar@ag.louisiana.gov
Facsimile: 225-231-1456                                   smithda@ag.louisiana.gov
Email: celiacan@bellsouth.net

*Counsel for Defendant*
*Louisiana Secretary of State*

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 3rd day of October 2018, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which gives notice of filing to all counsel of record. Counsel of record not registered in the CM/ECF system were served via other means.

                                                          */s/ Jason Torchinsky*
                                                          Jason Torchinsky