**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


JAMILA JOHNSON, ET AL.                                    CIVIL ACTION

VERSUS                                                    18-625-SDD-EWD

KYLE ARDOIN, in his official
Capacity as the Acting Secretary
of State of Louisiana


<u>**RULING**</u>

This matter is before the Court on the *Motion to Dismiss First Amended Complaint*[1]

filed by Defendant Kyle Ardoin ("Defendant"), in his official capacity as the Acting

Secretary of State of Louisiana. Plaintiffs Jamila Johnson, Norris Henderson, Renard

Thomas, Tramelle Howard, Allan Rogers, Mildred Armstrong, Kristen Smith, Ciara Hart,

Dadrius Lanus, Patricia Chaney, and Edward Galmon, Sr. (collectively, "Plaintiffs") have

filed an *Opposition*[2] to this motion to which Defendant has filed a *Reply*.[3] For the following

reasons, the Court finds that Defendant's motion should be denied.

**I.      FACTUAL BACKGROUND**

Plaintiffs are African-American voters in Louisiana who bring this action to

challenge Louisiana's 2011 Congressional Plan which Plaintiffs allege "dilutes African-

American voting strength and denies African-American voters in Louisiana the equal

opportunity to elect candidates of their choice for the U.S. House of Representatives in

---

[1] Rec. Doc. 33.
[2] Rec. Doc. 39.
[3] Rec. Doc. 37.
51882

violation of Section 2 of the Voting Rights Act."[4] Plaintiffs' *Amended Complaint*[5] alleges that the Louisiana Legislature intentionally "packed" African-American voters into the Second Congressional District ("CD 2") and diluted, or "cracked," African-American voters among the other districts in the 2011 Congressional Plan, rather than unifying African-American voters in an additional majority-minority Congressional District.[6] For a variety of racially discriminatory reasons, Plaintiffs allege that "Louisiana's failure to create a second majority-minority congressional district in its 2011 Congressional Plan has resulted in the dilution of African-American voting strength in Violation of section 2 of the Voting Rights Act."[7] Based on the alleged vote dilution described above, Plaintiffs assert that the whole Congressional Plan is a violation of Section 2 of the Voting Rights Act ("VRA") and seek the addition of a second majority-minority congressional district. Importantly, Plaintiffs do not expressly plead a constitutional violation.

Defendant now brings the instant *Motion to Dismiss* on several grounds. First, Defendant contends that Plaintiffs have failed to request a three-judge panel pursuant to 28 U.S.C. § 2284 which, *inter alia,* requires a three-judge panel "when an action is filed challenging the constitutionality of apportionment of congressional districts or the apportionment of any statewide legislative body."[8] Second, Defendant contends that Plaintiffs lack standing to bring these claims. Third, Defendant argues that "Plaintiffs never sufficiently allege that a second compact congressional district can be created in

---

[4] Rec. Doc. 19, p. 1.
[5] Rec. Doc. 19.
[6] *Id.* at pp. 1-2.
[7] *Id.* at p. 4.
[8] 28 U.S.C. 2248.
51882

Louisiana" and have failed to state a claim under Rule 12(b)(6).[9] Lastly, Defendant contends this case should be dismissed based on the equitable ground of laches.

## II.    LAW AND ANALYSIS

### A. Subject Matter Jurisdiction

According to 28 U.S.C. § 2248, "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." Plaintiffs argue that a plain reading of Section 2284 leaves no ambiguity that a three-judge panel is required only when plaintiffs raise constitutional claims. Plaintiffs maintain that they "have not raised a constitutional challenge, nor can Defendant foist one upon them."[10]

Although Plaintiffs *First Amended Complaint*[11] contains no express constitutional claim, Defendant contends that "the substantive constitutional claims are inseparable from Section 2 claims [of the VRA] based upon an alleged denial of equal protection and invidious discrimination in congressional reapportionment."[12] According to Defendant, all cases brought under the VRA are required to be heard by a three-judge panel.[13]  In support of his argument, Defendant relies on *Page v. Bartels*,[14] a Third Circuit case where the district court was reversed for not convening a three-judge panel in a voting rights case.[15] However, as both parties point out, *Page* is distinguishable because it was "an

---

[9] Rec. Doc. 33-1, p. 1.
[10] Rec. Doc. 65, p. 2 (citing *Caterpillar Inc. v. Williams* 482 U.S. 386, 392 (1987)).
[11] Rec. Doc. 19.
[12] Rec. Doc. 43, p. 3.
[13] Rec. Doc. 33-1, p. 4.
[14] *Page v. Bartels*, 248 F.3d 175 (3d Cir. 2001).
[15] *Id.* at 194.
51882

action involving both statutory Voting Rights Act and constitutional challenges to the apportionment of a statewide legislative body."[16] There, the court found that "a single district judge cannot reach the merits of the statutory claims unless he or she concludes that the constitutional claims are legally frivolous and insubstantial."[17] Here, as opposed to *Page*, there are no express constitutional claims asserted.

On the same day this case was filed, counsel for Plaintiffs filed two nearly identical cases in the Northern District of Alabama and the Northern District of Georgia. In the Northern District of Alabama, the court considered the almost identical issue presented here and found that "[a] claim solely alleging a Section 2 violation falls outside a plain reading of § 2284. Such a claim is neither a constitutional challenge nor 'when otherwise required by Act of Congress.'"[18] In that case, the court refused to look beyond the text of Section 2 or § 2284 "when their plain meanings are so clear."[19] Accordingly, Plaintiffs make similar arguments here regarding the legislative history and intent of Section 2284(a). In *Chestnut v. Merrill*, the "court refuse[d] to write into § 2284 or into Section 2 a provision requiring complaints alleging Section 2 violations to be heard by a three-judge panel - or alternatively striking 'constitutional' from § 2284 – so that all apportionment challenges, statutory and constitutional must be heard by a three-judge panel."[20]

Additionally, in *Thomas v. Bryant,* a Fifth Circuit motions panel recently discussed the issue of whether a three-judge panel is required to hear a statutory, rather than

---

[16] *Id.*
[17] *Id.*
[18] *Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1355 (N.D. Ala. 2019).
[19] *Id.*
[20] *Id.* at 1357.
51882

constitutional, action pursuant to Section 2 of the VRA.[21] First, in considering the jurisdictional nature of Section 2284(a), the court recognized that the statute has conflicting language on whether or not it is jurisdictional.[22] The statute requires that "a district court of three judges shall be convened" for certain cases, and the motions panel majority observed that the mandatory language appears jurisdictional. However, as the Fifth Circuit majority in *Thomas* also notes, the procedure for convening a three-judge panel is triggered "[u]pon the filing of a request for three judges."[23] The Fifth Circuit noted that such language "does not sound jurisdictional."[24] Acknowledging that "no reported case has ever used a three-judge panel for a case challenging district lines only under Section 2 of the Voting Rights Act,"[25] the Fifth Circuit then discussed at length the statutory interpretation of Section 2284(a), specifically whether the "constitutionality" modifier applies to the "apportionment of any statewide legislative body."[26] Relying on interpretive techniques and canons of construction,[27] the *Thomas* court found that the "context supports the natural reading that courts have long given it: that 'constitutionality' modifies both 'the apportionment of congressional districts' and 'the apportionment of any

---

[21] *Thomas v. Bryant*, 919 F.3d 298 (5th Cir. 2019); As both parties indicate, although *Thomas* is persuasive, it is not binding.

[22] *Thomas v. Bryant*, 919 F.3d 298 (5th Cir. 2019).

[23] 28 U.S.C. § 2284(b)(1).

[24] *Thomas*, 919 F.3d 298 at 304.

[25] *Id.* citing *Rural W. Tenn. African American Affairs Council v. Sundquist*, 209 F.3d 835, 838 (6th Cir. 2000) (case reassigned to single judge after dismissal of constitutional claims); *Chestnut v. Merrill,* 356 F.Supp.3d 1351 (N.D. Ala. 2019) (rejecting argument that single judge could not hear Section 2 challenge); *Bone Shirt v. Hazeltine*, 336 F.Supp.2d 976, 980 (D. S.D. 2004) (same result as *Rural W.*); *Old Person v. Brown*, 182 F. Supp.2d 1002, 1003 (D. Mont. 2002) (single judge hearing Section 2 challenge).

[26] 28 U.S.C. 2284(a); *see Thomas*, 919 F.3d 298 at 306.

[27] *Thomas*, 919 F. 3d 298, 305 (citing Scalia & Garner, READING THE LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012)).

51882

statewide legislative body.'"[28] Following this rationale, absent a constitutional challenge, a three-judge panel is not required for purely statutory challenges under Section 2.

Next, the Fifth Circuit panel turned to the statutory history of the three-judge statute and explained "why it would have been so significant and anomalous to require three-judge panels for statutory claims."[29] The court found that, "[i]f Congress had intended to expand the statue it was otherwise contracting by applying it for the first time to statutory challenges there were certainly better ways to do it than by stealthily inserting an extra 'the.'"[30] Indeed, Section 2 of the VRA was last amended in 1982, and Congress has had nearly 40 years to add a provision requiring a three-judge panel for Section 2 challenges.

Considering that "congressional enactments providing for the convening of three-judge courts must be strictly construed,"[31] the nearly indistinguishable issue and conclusions in *Thomas* and *Chestnut*, this Court finds that the three-judge statute applies only when the constitutionality of apportionment is being challenged. Such a challenge is not made in this case.

### B. Standing

In general, Article III standing requires a plaintiff to show that he has suffered an injury-in-fact caused by the defendant's challenged conduct and that a favorable decision will likely redress the plaintiff's injury.[32] In *Thornburg v. Gingles*, the Supreme Court held that, in Section 2 cases, "the minority group must be able to demonstrate that it is

---

[28] *Thomas,* 919 F.3d 298, 306 (5th Cir. 2019).
[29] *Id.*
[30] *Id.* at 307.
[31] *Thomas*, 919 F.3d 298 at 309 (quoting *Allen v. State Bd. Of Elections*, 393 U.S. 544, 561, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *Phillips v. United States*, 312 U.S. 246, 249-50, 61 S.Ct. 480, 85 L.Ed. 800 (1941)).
[32] *Terrebonne Parish Branch NAACP v. Jindal,* 274 F.Supp.3d 395, 408 (M.D. La. 2017) (citing *SCLC v. Supreme Court of State of La.,* 252 F.3d 781, 788 (5th Cir. 2011)).
51882

sufficiently large and geographically compact to constitute a majority in a single-member district."[33]

Defendant argues that "Plaintiffs have failed to produce any proof that: (1) any of the plaintiffs would actually live in either newly created majority-minority district; and (2) the newly formed districts containing Plaintiffs would be reasonably compact."[34] Defendant is correct that "[s]atisfying the first *Gingles* precondition—compactness— normally requires submitting as evidence hypothetical redistricting schemes in the form of illustrative plans."[35] However, at the pleading stage, Plaintiffs have alleged that an additional majority-minority district could be drawn incorporating the entirety of the parish where each Plaintiff resides. Additionally, Plaintiffs cite to maps that were introduced as amendments to the 2011 Congressional Plan to the Legislature but were ultimately rejected. Plaintiffs allege that the maps demonstrate that all parishes in which the Plaintiffs in CDs 5 and 6 could be included in a new majority-minority district. Defendant contends that "simply pointing to plans submitted by various members of the Legislature does nothing to fix Plaintiffs' lack of pleaded facts."[36] However, the *Amended Complaint* contains allegations that Plaintiffs live in areas which could constitute part of a new majority.[37] At this stage of the proceedings, the Court finds Plaintiffs' allegations sufficient to confer standing.

Defendant also contends that the Secretary of State is not the proper party to be sued. However, the Court finds that the Secretary of State is the proper Defendant to be

---

[33] *Thornburg v. Gingles*, 478 U.S. 30, 50, 106 S. Ct. 2752, 2766, 92 L. Ed. 2d 25 (1986).
[34] Rec. Doc. 33-1, p. 10.
[35] *Id.* at p. 17 (quoting *Gonzalez v. Harris County*, 601 Fed. Appx. 255, 258 (5th Cir. 2015)).
[36] *Id.* at p. 18.
[37] Rec. Doc. 19 ¶¶9, 19-25, 35, 93.
51882

sued. In *Hall v. Louisiana*, this Court found the Secretary of State, in his official capacity, to be the proper defendant in a voting rights case. Considering the Secretary of State's role as the "chief election officer in the state,"[38] "it cannot be said that he would not be required to comply with the orders of this Court in this matter, or that he would not be involved in providing, implementing, and/or enforcing whatever injunctive or prospective relief may be granted to [the plaintiff]."[39]

### C. Failure to State a Claim under 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[40]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[41]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[42]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  On a Motion to Dismiss, the inquiry is whether the allegations in the Complaint plausibly state a claim for relief. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

---

[38] La. R.S. § 18:421.
[39] *Hall v. Louisiana*, 974 F.Supp.2d 978, 993 (M.D. La. 2013).
[40] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[41] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[42] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d at 467).
51882

and a formulaic recitation of the elements of a cause of action will not do."[43]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[44]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[46]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[47]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[48]

Defendant contends that Plaintiffs have failed to sufficiently allege that African-American voters can constitute a reasonably compact majority in two districts. Again, relying on the *Gingles* framework to support his argument, Defendant contends that, "[s]atisfying the first *Gingles* precondition—compactness—normally requires submitting as evidence hypothetical redistricting schemes in the form of illustrative plans."[49]  However, as discussed previously, at the motion to dismiss stage, the Court is bound to accept Plaintiffs' well-pleaded facts as true and does not require "submitting as evidence hypothetical redistricting schemes." Even so, Plaintiffs have not only alleged facts

---

[43]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[44]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[45] *Twombly*, 550 U.S. at 570.

[46] *Iqbal*, 556 U.S. at 678.

[47] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[48] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

[49] Rec. Doc. 33-1 (*citing Gonzalez v. Harris County*, 601 Fed. Appx. 255, 258 (5th Cir. 2015)(per curium)).
51882

concerning the current demographics of the challenged districts and proposed majority-minority districts, but they have highlighted examples of maps that are allegedly compact.[50] Defendant argues that "[t]he vague references to the plans submitted, but not passed, in 2011 are unavailing."[51] However, Plaintiffs' allegations that "an additional majority-minority district could be drawn incorporating [the entirety of the parish] where [each Plaintiff] resides,"[52] coupled with maps which purportedly demonstrate that "an additional majority-minority district specifically encompassing the very parishes where Plaintiffs reside,"[53] are sufficient at this stage in the proceedings. Accepting the allegations as true, the Court finds that Plaintiffs have sufficiently pled a cause of action arising under Section 2 of the VRA.

### D. Laches

Defendant further contends that the equitable doctrine of laches bars Plaintiffs' requested relief.[54] Defendant argues that, because "Plaintiffs waited seven years and three congressional elections to bring their claim,"[55] there has been an "inexcusable delay that results in prejudice to the defendant."[56] A laches defense has three elements: "(1) delay in asserting a right or claim; (2) that the delay was inexcusable; and (3) that undue prejudice resulted from the delay." Like all affirmative defenses, the party asserting a laches defense bears the burden of proving it.[57]

---

[50] Rec. Doc. 19 at ¶¶ 5-9, 34-39.
[51] Rec. Doc. 33-1, p. 17.
[52] Rec. Doc. 39, p. 10 *citing* Rec. Doc. 19.
[53] *Id.*
[54] Rec. Doc. 33-1, p. 21.
[55] *Id.*
[56] *Id.* (quoting *Elvis Presley Enters. V. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) (internal quotations omitted).
[57] *Thomas*, 919 F.3d 298, 312 (5th Cir. 2019) (citing *City of El Paso, Tex. V. El Paso Entm't, Inc.*, 382 F. App'x 361, 366 (5th Cir. 2010)).
51882

At the outset, Plaintiffs contend that laches does not apply in this case.[58] In support of their position, Plaintiffs cite several cases which generally stand for the proposition that laches does not apply when a plaintiff is seeking future, prospective relief. In *Environmental Defense Fund v. Marsh*, the Fifth Circuit granted only prospective relief and noted that "laches may not be used as a shield for future, independent violations of the law. The concept of undue prejudice, an essential element in a defense of laches, is normally inapplicable when the relief is prospective."[59] Indeed, when relief sought is prospective, any "prejudice" suffered by Defendant would have occurred regardless of the time of filing suit. Further, "[i]t is difficult to say that a government agency can be prejudiced by forcing it to comply with the law."[60] Nevertheless, because several courts have applied the doctrine of laches in voting rights cases,[61] this Court will analyze Defendant's arguments.

For the defense of laches to apply, the delay must be inexcusable. The Court is persuaded by Plaintiffs' argument that, at this stage in the proceeding, Defendant has not carried its burden of proving that Plaintiffs brought this action with undue delay. In *Maxwell v. Foster*, under similar facts, the court granted summary judgment based on the affirmative defense of laches. There, the plaintiffs challenged three of Louisiana's legislative districts as racial gerrymanders and brought the claim seven years after the districts were implemented.[62] The court found that the defense of laches applied because

---

[58] Rec. Doc. 65, p. 3.
[59] *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 1005, n.32 (5th Cir. 1981).
[60] *Environmental Defense Fund v. Alexander,* 614 F.2d at 480.
[61] *See Maxwell v Foster*, 1999 WL 33507675 (W.D. La. 1999); *Chestnut*, 356 F.Supp.3d 1351, 1356-57 (N.D. Ala. 2019).
[62] *Maxwell v. Foster*, 1999 WL 33507675 (W.D. La. 1999).
51882

undue prejudice resulted from the inexcusable delay in filing suit.[63] The court relied on the plaintiff's deposition testimony to find that there was no excuse for waiting seven years to file suit. Here, however, the Plaintiffs plausibly plead facts that the delay is excusable. Although Defendant contends that "Plaintiffs should have known their rights were impacted upon the passage of the 2011 plan,"[64] at least two Plaintiffs are alleged not to have lived in the districts at issue until the last few years. Plaintiff Johnson and Hart moved to their respective congressional districts in 2017.[65] At this stage, the record is not sufficiently developed to enable the Court to determine whether there is an inexcusable delay.

The Court is aware of the Northern District of Alabama's recent holding in *Chestnut*, filed by the same counsel for Plaintiffs here. There, the court found the claims barred by laches because there was no excuse for the delayed filing.[66] Addressing a similar argument, the court found the fact that one plaintiff did not reside in Alabama until 2016 did not excuse the delay of the other nine plaintiffs.[67] Here however, two plaintiffs did not reside in the challenged district until 2017, and two others were not registered to vote until 2015 and 2016, respectively. The Court finds the facts and argument similar, but ultimately distinguishable. Multiple plaintiffs had recently become registered voters in the challenged districts before filing suit on June 13, 2018. Additionally, in *Thomas*, the Fifth Circuit found a laches defense not likely to succeed on appeal based on the

---

[63] *Id.* at *3.
[64] Rec. Doc. 33-1, p. 21.
[65] Rec. Doc. 19 at ¶¶15, 22.
[66] *Chestnut v. Merrill*, 2019 WL 1376480 at *6 (N.D. Ala. 2019).
[67] *Id.*

51882

inexcusable delay of one plaintiff, without argument as to the co-plaintiffs.[68] Similarly, Defendant's laches argument refers to Plaintiffs collectively, without carrying its burden to show that the recently-registered Plaintiffs' delay in filing was inexcusable. Accordingly, the motion to dismiss based on laches is denied.

## III.    CONCLUSION

For the reasons set forth above, the Court finds that this case is properly before a single district judge. Further, at the motion to dismiss stage, Plaintiffs have alleged sufficient facts to demonstrate standing and survive a motion to dismiss. The Court also concludes that the record is insufficiently developed to find Plaintiffs' delay inexcusable.

Accordingly, the *Motion to Dismiss Plaintiffs' First Amended Complaint*[69] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>May 31, 2019</u>.


_____
**SHELLY D. DICK, CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**


---

[68] *Thomas*, 919 F.3d 298, 312 (5th Cir. 2019).
[69] Rec. Doc. 33.
51882